When you're ready. Thank you. Good morning, if it may please the court. Trenton Kashima on behalf of Appellant Alan Wiseley. If I may, I'd please like to reserve two minutes for rebuttal. You keep your hand on the clock and we'll try to help. Okay. Thank you, Your Honor. Under the Federal Arbitration Act, arbitrations are generally enforceable set for the normal contractual defenses, such as unconscionability. However, before we can reach the issue of unconscionability in this particular case, we have to decide which state's law applies. Now, the conditions of use, the terms of agreement that actually contain the arbitration agreement in this case, call for application of Washington law. Could I ask a question that was puzzling me? I see that Washington and California law are very slightly different, and perhaps not to the extent that there's a fundamental policy difference, but there's slightly difference in how they look at procedural and substantive unconscionability. What difference does that make in this case to your client's case, whether we apply Washington or California law? Because they're very similar. Yes, Your Honor. California unconscionability law, under the Arminez case, specifically states that procedural and substantive unconscionability both have to be present before a contract can be unenforceable. However, they do not have to be in the same degree. California adopts a sliding scale test, meaning that the more procedural unconscionability, the less substantive unconscionability. So how does that make a difference in this case? So in other words, what turns on whether we think Washington or California law applies? Well, Your Honor, first, as you mentioned, there is a doctrinal difference between the two doctrines. They're applied in a different way. I think the second part of your question is whether there was a fundamental policy. My question is, in this case, what turns on which law is applicable, if anything? Is it just that you want to cite California law because you don't want to research Washington law? Or is there some actual difference it makes if we apply California law than Washington law in this case to your client? I think there would be a difference in this case. For example, Washington law, under Washington Supreme Court precedent, particularly the Zuber versus Airtouch case, states that to invalidate a contract under procedural unconscionability, you have to show first that the contract was just incomprehensible, that they could not understand the arbitration agreement, which is something we don't have here. Additionally, you either have to show that there is undue pressure placed on a contracting party so that they don't have an opportunity to view and appreciate the terms, something else that we don't have here. Or otherwise, that one of the contracting parties refuses to address the questions and concerns. And so Washington law sets a very, very high bar for unconscionability. For procedural unconscionability. So you're saying that under Washington law, the contract wouldn't be procedurally unconscionable. Is that what you're saying? Yes. Now, are we saying this because we're trying to get out from under the choice of law clause in the contract? Because if that's what we're trying to do, we're putting the cart before the horse. Until we've determined whether or not this is an enforceable contract, we don't know whether or not we even look at the clause that says Washington law applies. So we've got to look at this independent of the choice of law clause to determine whether or not the contract is enforceable. Now, if we do that, does that affect how we analyze the choice between California and Washington law? I don't believe so. Under California law, the same elements that lead a contract to be unconscionable also lead to the application of California law. And this is simply because California has such a strong public policy against inserting unconscionable. Maybe my question isn't so much whether or not it would make a difference. It seems to me that the only way we can analyze whether or not California law applies or not is independent of the choice of law clause, because the choice of law clause is contained in the contract that we're trying to decide whether it's enforceable. I'm sorry. I don't quite get your question. Okay. There's a choice of law clause in the contract. We're trying to figure out if the contract is unconscionable and therefore unenforceable. Correct. If it's unenforceable, the choice of law clause doesn't apply. Your Honor, under the doctrine of severability, we treat the arbitration agreement as different from the contract itself. So while the contract itself... I see. So you're saying that this provision is severable? Exactly. And so right now we are only determining whether the arbitration agreement itself is unconscionable and not the contract itself. I understood your briefing that you weren't arguing contract formation. And so what you're saying is suggesting that that's correct. But you're not arguing that a contract was formed. You're just saying that the arbitration clause in the contract is not enforceable. Exactly. Okay. Because under the unconscionability analysis, actually it's a defense to contract. So it presumes that a valid contract actually does exist. Well, no, it doesn't. If it's unconscionable, it's not a valid contract. Well, at least the arbitration clause is not. Exactly. Now here, Your Honor, under the assumption that California law applies, this particular arbitration clause would be indeed unenforceable. And like I said before, the same elements that go into rendering arbitration clause unenforceable under California law also calls for the application of California law. Now, of course, as I mentioned before, unconscionability has both a procedural and substantive element. In California, unconscionability is generally first shown by a contract of adhesion. And here, Amazon is… So you have to, if you're choosing, let's assume for the moment that California law applies, which I'm not sure about, but assuming it does, you would have to show both procedural and substantive unconscionability, correct? That is correct. Okay. But… And in order to get to the California law issue, you have to basically reverse or cancel out the form selection clause, right? That's correct. That requires a threshold showing to not yield to the party's agreement. I suppose you could say it's an adhesion contract, and so the purchaser of this Amazon item didn't really get to negotiate the form selection clause. But you've still got to deal with the form selection clause, like any other provision in the contract, right? Certainly, Your Honor. And here, the form selection clause would be governed by the second restatement of conflict of laws, which states that Washington law should not apply if it would be against a fundamental public policy of California law, and if California has a greater interest in seeing its law. So both California and Washington have extremely similar laws regarding when an arbitration provision is unconscionable. It's hard to see what the fundamental policy difference is. That's why I was questioning why Washington law wouldn't apply. Understood, Your Honor. The fundamental public policy difference is that although Washington and California both have prohibitions against unconscionable contracts, California in the CLRA, or Consumer Legal Remedies Act, specifically prohibits inserting unconscionable terms into a consumer contract. And under California Civil Code 1751, the protections of the CLRA are non-waivable, meaning in the instances of consumer contracts, the California legislature has stated a strong presumption that California's law should apply to an unconscionability analysis. You could get the relief that you seek, ultimately, under either statute. It's just a clear shot for you under California law, right? I think that's a fair assumption, Your Honor. Now, additionally, California has a greater material interest in seeing its law applied. As this Court stated in the Mazda v. Honda Motors case, each state has a fundamental interest in seeing that its own consumer protection laws are applied to transactions occurring within its borders. And additionally, in the All-Striker v. Alienware case, this Court also stated that California in protecting a magnitude of its citizens and its consumers under its consumer protection laws. Washington has a policy not to protect its consumers. Is that your suggestion? No. I mean, because there's supposed to be a fundamental policy difference. No, Your Honor. Under Netloy's, right? Mm-hmm. It's not that— I didn't really say that. Obviously, Washington is going to protect its consumers. Washington can protect its consumers, but Washington's law is presumed to apply within its own borders. So is there—the fact that there's a difference between the nature of the laws that apply, is that enough to be a fundamental policy difference under Netloy's?  And that's why I mentioned the CLRA in particular, because this is actually a legislature's indication that protections of consumers is a high priority in California. But not in Washington? Although it may be a priority in Washington, California has some of the strongest consumer protection laws on the books. And California— And the prohibition that you're defining in California law has no counterpart in Washington law. Is that what you're telling me? As far as unconscionability goes? Yes. I don't believe that there is a similar— I mean, a specific statute regarding— There's the Washington Consumer Protection Act, right? I'm not sure if there's a specific provision in that specific act. There's very strong provisions for protecting consumers. But not particularly against unconscionable contracts, which is the issue at bar. Now, again, assuming California law applies, we have to review whether this contract would be unconscionable in California law. And, of course, that starts out with a review of whether the contract is one of adhesion. Could you address the distinction, if any, between what we have here in front of us and the contract in Thompson, one of the two cases that we sent out the notice for, to be prepared to argue? Yes. Okay. In Thompson v. 23andMe, this case involved a single transaction, namely the sale of a genetic testing piece of equipment or similar, and the results therefrom. Now, given the nature of genetics, your genetics don't change, so it's unlikely that you're going to repeat the transaction. Now, in Thompson, there was two particular issues that was found. First, that there was procedural unconscionability. However, the procedural unconscionability was to a minimum degree because the only showing of procedural unconscionability was that of a contract of adhesion, which we have here. But we have a greater showing of procedural unconscionability due to the element of surprise that's present in the conditions of use. Particularly relevant to this case is the Second Circuit's recent decision, the Nicosia v. Amazon.com. Which is purporting to be applying Washington law, so that's not applicable because of the fundamental policy difference, right? Well, it actually wasn't discussing unconscionability at all. It was discussing the nature of adequate notice. That would only be under Washington law, though. So Nicosia was discussing Washington law, and we're trying to discuss California law. Tompkins was California law, if I recall correctly. Well, Nicosia, I think, transcends Washington law because it was discussing the difference between click-wrap and shrink-wrap contracts. Shouldn't we be looking at when? Isn't that the leading case in the Ninth Circuit for that issue? Yes, Your Honor. However, it's not the law that is particularly persuasive from the Nicosia case, but the Court's reasoning. The Court decided on the same facts that we see here, that reasonable minds can disagree whether a consumer was placed on adequate notice that by clicking the Place Your Order button, that they were also assenting to additional terms contained within the conditions of use. But in when, it seems to indicate, it cites with approval cases that said, by clicking Sign Up, you're indicating that you have read and agreed to the terms of service was sufficient. Although that was no holding, it seemed to indicate that that would be enough. And here, similarly, it says by placing your order, you agree to Amazon.com's Privacy Notice and Conditions of Use next to the Place Order button. So it doesn't when point us towards saying this was not procedurally unconscionable? Well, as the Nicosia Court pointed out, the facts of the case are a little bit different. And particularly, the Nicosia Court said that the admonishment by placing your order, you agree to Amazon's Privacy Notice and Terms and Conditions, was not conspicuous in the contract. And it was not particularly near the button that states Place Your Order. Additionally, the Nicosia case also stated that the button that says Place Your Order, unlike the Tompkins case that actually had a button that says I agree to the terms, is not indicative to a consumer that they're agreeing to additional terms. And so this creates some level of confusion. I see that I have about a minute left. Can I request? Why don't we hear from the other side, and we will give you enough chance to say what you need to say on rebuttal. Okay. Thank you. Good morning, Your Honor. May it please the Court, my name is Jim Grant. I'm here on behalf of Amazon.com. And let me say I think this case is really rather straightforward, as counsel has acknowledged in response to questioning. The only issue here is whether the agreement, the arbitration agreement that Mr. Wisely accepted is unconscionable. That he clicked on. Whether he accepted it in total terms may be a different question. It's a question that he's conceded he's not raising. The issue here. I don't want to quibble over the meaning of the term accept. Okay. No, no, no. And that wasn't my point, Your Honor. What I was about to say, and I think this is the first important point that the Court needs to understand, is this is not a case about whether he entered into a contract. So he concedes contract formation. He concedes it. He entered into contract six times. The district court expressly found that he accepted the conditions of use and that he accepted the arbitration agreement. So that's a non-issue. And, in fact, let me, well, I'll come to Nicosia in just a moment. The second key point that I think the Court needs to understand is that the plaintiff in this case, though his burden is to show unconscionability with factual evidence, the district court showed nothing. The bridge fund capital case puts the burden on him to do that. He came forward with no evidence whatsoever about anything that was unconscionable as to him. In fact, he came forward with no evidence as to himself at all, not a declaration, not an affidavit, not anything. The third point is this, and I think it goes to . . . At least by California law, I don't think that matters. I beg to differ. I think it does matter because, at least under the standard that this Court has stated, it is a factual burden to come forward to show and prove unconscionability. Oh, I understand that, but you said he showed no unconscionability as to him. Under California law, if its unconscionability is applied to somebody else, the contract is unconscionable. And my point, a fair point, Your Honor, my point is that he didn't show unconscionability as to anyone. Oh, that's a different question. Which takes me to my third point, actually, and I think the other fundamental aspect of this, is that every one of the challenges he makes to unconscionability now, every one of them has been rejected by this Court in one fashion or another. Under Washington law, actually not always from this Court under Washington law, and under California law, particularly the recent decisions in Tompkins v. 23 and Me, and if I mispronounce the name, apologize, Poulon v. C.H. Robinson Company. Those cases and other cases basically just dispose of all of his arguments. I'm not sure Poulon does, because it was not one of these sort of hidden surprise things. Tompkins is closer. I think there are aspects of Poulon that address different pieces of it, and certain of his arguments about, for example, incorporation of AAA rules, portions of claims that are not arbitrable, those sorts of issues. And that's what I intended to walk through. I did not intend to argue about the difference between Washington law and California law. It's irrelevant here. Even if we assess this under California standards, all the challenges that Mr. Wisely raises do not establish unconscionability. And, in fact, that's my primary focus. You say it's irrelevant. I don't think you're intending to say to us that we can apply California law in deciding this case, or do you say that? No. I'm saying that the proper choice of law analysis is what the district court did, and that is to look at whether there really is a fundamental distinction, a difference of some kind that's material between Washington law and California law. If you don't find a difference, you never get to the second step of the analysis. Now, let me ask you it in a different way. I want to make sure I'm not putting you into a position where you don't want to be. Are you saying that in analyzing this case, we can draw equally from California and Washington law when you say there's no difference? Let me respond this way, that Washington law does govern this agreement. Given the claims that Mr. Wisely has raised, they fail under Washington law or California law. Does that respond to your question? Well, no, not really. I asked you, are you telling us that we can rely equally in analyzing this case on both California and Washington law? Then I would say this, Your Honor. Properly, the court should apply Washington law, because Washington law governs under the contract in the Nedloyd analysis and Section 187 of the restatement. But here it makes no difference to look at California law because the answer is the same. I see. But you're not conceding that California law applies. So when there are differences between Washington and California law that favor the plaintiff, you say the Washington law has to be applied. It would depend on what that difference is. But you're correct in suggesting that I say Washington law applies. That's correct. But my point is that as you go through the pieces of the uncountability claims that he makes, every one of them fails under Washington law or California law, so it's of no matter. And so let me, if I can, sort of walk through them. First is his position that the contract is one of adhesion. I've got to go back to the Supreme Court in the Katsapjong case. The times in which consumer contracts were anything other than adhesive is long past. Form contracts and adhesion contracts have been enforced in California and Washington for years. And under this Court's analysis, even applying California law, and this is from Publon, the adhesive nature of a contract gives rise to a very low degree of procedural unconscionability at most. So to the extent that there is an argument that it's an adhesion contract, that's a very slight amount of procedural unconscionability. The analysis under Publon and under the California law is there would have to be a high degree of other kinds of unconscionability, and here there is none. Well, it's a factor. Got it. It's a factor. Yeah, got it. So let me turn to the second. That has to do with the notice provisions. And here's where there's a disconnect. The argument that the plaintiff makes is that the checkout page that he used didn't give adequate notice of the conditions of use, notwithstanding that what it actually says is by placing your order, you agree to Amazon's conditions of use and privacy policy. Yeah, and where is that on the page as it then existed, not the current page? Correct. It's the very first line under the heading. So it's the first thing you read as you're looking about what this page is. And obviously this is the important terms of what you're doing as you're making a purchase. And then to the right of that. So Nicosia found that was not enough? Nicosia said that reasonable minds may differ about whether that was sufficient notice or not. Nicosia, a couple other things that are different. One, it was a 12B6 motion. So what the court was looking at there was just whether the allegations of the complaint were sufficiently plausible in order to get past a 12B6 standard. The court held that they were. Did not decide that the layout of the page was not reasonable notice. Said expressly, we are not deciding that. Secondly, the issue in Nicosia was assent. It wasn't that the contract was somehow unconscionable because of the reference to the conditions of use. Contract formation in Nicosia. Exactly. Yeah. So here we don't have that issue at all. And there really can't be a viable claim on behalf of Mr. Wisely that it's unconscionable to have accepted the conditions of use that he admits he accepted. That he acknowledges he accepted, in fact, six times. That would run afoul of Concepcion then. Excuse me? That would run afoul of the Supreme Court's rule that you can't have a different rule for arbitration clauses as to other parts of the contract. That's right. And one other thing I should point out about Nicosia. It went back to the district court on remand and actually just two weeks ago the magistrate judge recommended in that case that the arbitration clause be enforced. Looking at the history of the dealings that Mr. Nicosia had and said no reasonable person, after having done this multiple times on the website as he had in making purchases, could ever reasonably believe that he was not assenting to the agreement. I don't understand why the fact that he did it six times makes all that much difference. That is to say my understanding of normal consumer behavior is they blow past this time after time after time. And the first time, sixth time, seventh time, they blow past it every time. So I don't know that it helps you a whole lot that the consistent consumer behavior is that they always ignore this line. Well, I'd put it this way, Your Honor, in response. I think consistent consumer behavior is that they recognize by purchasing things on websites that they're accepting the terms that go with that website or by using Facebook or any other site. But everybody knows that they don't read them. So that's whatever those terms might be out there in the cloud somewhere, but nobody reads them. And contract law has always been that your failure to read something is not an excuse. So long as you're given notice of the fact that the terms and conditions govern, then you're bound to the terms and conditions. But I come back to the point, I'm not sure it makes any difference that he did it six times compared to once. And I suppose I beg to differ. I think it does make a difference that when you've gone through the transaction six times and you've had six different opportunities to identify that that's what you're doing by this transaction, that it's a lot less defensible to say that you didn't assent to it. But in any event, in this case, there's no question of assent because he's already conceded that. So this argument about that provision of the checkout page has nothing to do with his claims of unconscionability. He does not claim that there was something unconscionable with the way the arbitration agreement was presented in the terms and conditions. He doesn't say that at all. In fact, that would be a very poor argument because it's very plainly stated. He doesn't say that he was coerced into accepting the agreement. He doesn't say he was forced into buying something on Amazon. So he doesn't point to anything. How about the provision that allows Amazon to change the rules at any given moment, unilaterally? Yeah. The provision is that it allows Amazon to change its services and provisions on the website. At any given moment, unilaterally. Without notice. Without notice. It actually does not say without notice. Oh, it doesn't? No, the provision does not say that. Nor does the provision say that those changes will be retroactive. It simply says we may change things going forward from time to time. Does it say going forward? Let me get you the exact language because I don't want to misstate. So even though you don't read this, you don't need to worry about it going forward because we may change it. Is that right? So if somebody assents, I think the position said that if someone clicks and assents to the provisions, those are the provisions that govern the contract between Amazon and the party. Is that Amazon's position? That's right, Your Honor. And, in fact, what we did in this case, and I want to come back to your question, but what we did in this case was move to enforce the version of the agreement that existed immediately prior to his purchase. And that is our position, that that's the provision that governs, unless you've accepted some other version of the agreement thereafter. It's not a situation where there would be changes going forward, and we've never suggested that that would be the case. To your question, Judge Barker, about whether Amazon could unilaterally change something, that, too, has also been established under California law and Washington law as something that is generally allowed. You can have change-of-terms provisions, but it's governed by the duty of good faith and fair dealing. And I believe this was in both Poubon and Tompkins. They pointed out that because of that governing factor, it's not simply a matter that Amazon would go out and strike arbitration altogether. And were it to do that, it would have a very serious problem under good faith and fair dealing. So with that assumption, there's nothing unlawful or unconscionable about a provision that permits change of terms. And under Washington law, the standard for whether you can do something like that is whether there's sufficient consideration on both sides. And, in fact, here there clearly is. I'm reading from the clause. It says Amazon, quote, reserves the right to make changes to our site policy service terms on these conditions of use at any time. Correct. Does it say anything about going forward or not? It does not say going forward. It also does not say that they would apply retroactively. So you added going forward. I added that phrase, and that's why I was trying to pull up the exact language to do what Your Honor just did. Okay. So going forward is not in the law? It does not say that. Okay. But the way that we've interpreted that, and for purposes of this case, anything that's applied, is what that means is going forward. When you say the way we've interpreted that, do you have cases in which you've done that? I mean, do you have evidence that you've interpreted it that way? No, Your Honor. The arbitration provision has never changed. It didn't change from the period of time that Mr. Wise was here. Well, then how can you say the way we've interpreted it? Because it sounds like you never have. You applied, in this case, you applied the agreement. What I'm suggesting is that's right. We applied a version of the agreement that applied at the time that the purchase was made. I understand that, and you've never changed it. Correct. But you're telling me that you've interpreted it, that changes are only those that are going forward, but you've never changed it. So, in fact, you've never interpreted it that way because you've never had an occasion to interpret it. Your Honor is correct. I'm probably better off to say that it's irrelevant to say that the change of terms provision means anything for purposes of this case because it's never been applied. And, in fact, case law from this circuit and from many district courts in this circuit have also recognized that the case is not the same. But it could be unconscionable if you went back and changed rules retroactively that changed the relationship of the parties, right? If someone were to do that, that potentially is unconscionable. It depends on what the change is, I suppose, and I don't know how to answer the hypothetical. But that's not what we've done, and that, too, would be governed by the duty of good faith and fair dealing, as Boudreaux and Tompkins both said, would rein in any kind of a change like that. What do you do with the distinction between this case and the Thompson case? The Thompson case had a carve-out very similar to the one here where intellectual property claims were not submitted to arbitration. Well, in the Thompson case, it didn't look as though that really favored one side or the other because the court said it couldn't imagine any and had no evidence of any claims that actually would be brought by Tompkins with respect to intellectual property. I'm not sure that's necessarily true with respect to Amazon. That there would not be any claims that Amazon would bring as to intellectual property? Does Amazon have intellectual property that it seeks to protect and might seek to protect in litigation? I suspect they might. I think that's very possible. Amazon had lots of intellectual property. That, I think, is true as well for 23andMe. In fact, the court recognized that in the Tompkins decision. No, because in the Thompson decision, Tompkins said, no, we don't see any plausible lawsuit brought by Tompkins to enforce intellectual property. Oh, I beg your pardon. I thought you meant the company and did they have intellectual property rights that they were attempting to protect. If you mean the consumer, and clearly Tompkins acknowledged that in most circumstances, consumers would not be asserting intellectual property claims. I'm not making myself clear. In Tompkins, we said we see no possibility or there's no evidence of suits that would be brought by 23andMe in order to protect its intellectual property. I think I may have read that a little bit differently. But clearly, Amazon does have interest to protect its intellectual property. In other words, the carve out here does operate to the benefit of Amazon, I think in a way that it did not operate in 23andMe or in the Tompkins case. Well, I thought in Tompkins we said that to the extent 23andMe has valuable intellectual property rights in its website and database, it's entitled to an extra margin of safety based on legitimate business needs, citing the California Supreme Court in Baltazar. Yeah, it said that too. Yeah, so I think it recognized that 23andMe had some intellectual property rights and they were using the genetic printouts as designs or something. If I may, I realize I'm past time. I don't know if I may finish up on the point. I believe that's right. Amazon certainly does have intellectual property rights. Customers using the Amazon website may have their own intellectual property rights or actually preserved under the terms and conditions. But in any event, the fact that the ruling in Tompkins, which involved a broader carve out than the Amazon carve out, which has to do with injunctive relief for intellectual property claims. Tompkins had to do with any intellectual property claim of any kind. But the holding of Tompkins, I think, supports clearly here that Amazon's provision also is not unconscionable. There is a legitimate business purpose for its provision as well and a modicum of bilaterality, which is the California standard. May I ask just a quick question, even though we're over time? If we ruled an appellant's favor, what would the practical effect of that be? What would happen then? Would there be a remand for trial because it came to us by a summary judgment, right? It came here on a motion to compel arbitration, which is a summary judgment-like standard. But if I hesitate to say this, if the court were to reverse and say that arbitration should not go forward, then the case would proceed on all other bases in the district court. Right. Just as an ordinary lawsuit. Correct. Although I urge that that should not be. That would have some impact on how you craft your agreements in the future, right? Certainly so. I mean, I have to say- But you don't want to wind up trying every one of these in a court. Having dealt with arbitration issues for going on the better part of 15 years, companies can consistently look at how to address arbitration clauses to make them as fair and equitable to consumers as possible, but also in reaction to court decisions. And I gather that the website today is somewhat different from the website we're dealing with in this case. Is that correct? Yes. With Amazon.com, it changes on a daily basis, and in regards to provisions of the terms of use, conditions of use, and other things as well. No, I gather the terms of the- I gather it's made more prominent now what the conditions of use are and where you're clicking on and what you're agreeing to. The checkout page has changed over time. And in what ways relative to the questions in front of us has it changed? In what ways relevant to that? Relevant to the questions in front of us, has it changed? The references to by placing your order, you're accepting the conditions of use, has been moved closer to the button. There used to be two buttons on the page, as I remember. One was at the top, one was at the bottom. I think the second button maybe had been taken off. And I have to apologize. I'm outside the record, and if I'm slightly misstating, I hope you'll forgive me. Sure, sure. And otherwise, as Amazon consistently has done, they've sort of cleaned up to try to make sure the presentation is as direct and straightforward as it can be. A word of personal response. My law clerks want to make sure that nothing that's decided here will interrupt their availability to Amazon Prime. I can guarantee you that, Your Honor. We took the other side over. Why don't we put three minutes on the clock? Thank you, Your Honor. I appreciate it. I'd like to clear up some misunderstandings. First, there is a rich factual record in this case. It's just that the facts are largely not in dispute because it's a website whose terms can be viewed by anybody. So it doesn't need a declaration from our particular client. However, I want to go back to this idea of the modification clause in Amazon's conditions of use. Mr. Grant stated that this modification clause has never been used. However, that's simply not true. In the original arbitration clause, it calls for applications of the supplementary procedures for consumer-related disputes, a AAA set of rules. However, if you look at the RJN that was filed by defendants, they're now stating that a different set of rules should apply, the consumer arbitration rules. Now, this is not a difference without distinction. The new set of consumer arbitration rules raises the threshold on documents-only arbitrations from $10,000 to $25,000. Additionally, it gives Amazon additional time to respond to a request for arbitration, 10 days versus 14 days, and strips the emergency measures of the original arbitration rules. So which rules are applicable in this case? Well, this is the thing. Under their unilateral ability to change the arbitration agreement, they now state that the newer consumer arbitration rules are applicable. And they're applicable to your client? Yes, they've actually been used against the other plaintiff in this case who currently is not before this court and purchased at the same time. Now, the reason we know that this is a modification of the contract is, like that is stated, the Poblan case, you cannot insert by reference or incorporate by reference a set of rules that simply doesn't exist. What you just said, in the record, and if so, where is it in the record? It is in the record. You can see the difference between, well, the fact that they applied the consumer arbitration rules to the most recent dispute with the other plaintiff is in their RJN. What's RJN stand for? Sorry, request for judicial notice. I apologize. Additionally, the differences between the rules can be seen at the record at 134, which is the consumer arbitration rules. The supplementary rules of procedure are at 182. And the commercial arbitration rules are at 198. And so the court can view the differences between these rules. And that actually brings… And the arbitration provision, where does it show the arbitration provision changed to incorporate different rules? Actually, the arbitration agreement still states, as of today, when I last looked, and, of course, this is in the record, that the supplementary procedures are still applicable, the old set of rules. Okay, so the arbitration agreement didn't change. So what changed then? Well, Amazon reserves, of course, the right to unilaterally change the contract, and that's the only answer that we have here. So there is a contract on the website. Yes. And are you saying that the language of that contract has changed? The language of the contract hasn't changed. Has not changed. Okay, so what is it that has changed? Amazon's interpretation thereof. Instead of applying the rules… If you look at Amazon's request for judicial notice that was issued to this court that contains the arbitration from the other plaintiff that's not currently before this court, Ms. Fagelstrom, you can see that they actually applied, and defendant actually agrees that they're applicable, the newer set of consumer arbitration rules. And simply put, these newer sets of consumer arbitration rules did not exist. But that's not part of their arbitration agreement. So whatever was agreed to between Amazon and this other defendant, it's not part of the arbitration provision. Yes, and that's exactly my point, Your Honor, is the only way that these newer terms could become part and be applicable is if Amazon unilaterally changed it. Or the defendant agreed to follow these newer rules. I guess I'm not understanding. No. Because I guess if the contract says rules X applies, then presumably that's an enforceable part of the agreement. That's correct, Your Honor. But for some reason, like I stated, Amazon doesn't feel that it has to live up to its arbitration clauses. You know, I'm confused, and maybe you can help me. Yes, Your Honor. What's changed and what's not changed? Is the arbitration agreement that's in what you click on changed? Does it, for example, say, with respect to then current arbitration rules, or does it specify certain arbitration rules and now we're looking at different arbitration rules? Does that make it clear as to where my confusion is? Certainly, Your Honor. And if I could draw the Court's attention to page 278 of the record that actually has the arbitration agreement. The arbitration agreement says a specific set of rules shall apply. That is the procedural rules, I'm sorry, the supplementary procedural rules for consumer-related disputes. Now, as this name suggests, these rules actually supplement another set of rules, which are not included in the arbitration agreement, which is the commercial arbitral rules. Those rules together are what, at least in the past, and as stated in the arbitration agreement, should govern the dispute. Around 2014, AAA changed its rules and basically consolidated two sets of rules and made changes to those rules into a single set of rules called the consumer arbitration rules. Now, defendant, Amazon, now states that it's these newer set of rules that should be applied to future disputes. Okay, and I don't have the specific provision of the arbitration clause in front of me. Does that, so you can just tell me, does the specific arbitration clause refer to the earlier rules by name, that is to say the supplemental rules? By name. And also, I think you brought up an additional issue, is sometimes arbitration agreements can state are whatever newer set of rules are applied by the AAA. It doesn't include any terms to that regard. I get it. And so this creates an issue because not only is Amazon changing its arbitration agreement under its unilateral amendment clause, but also adds a level of procedural unconscionability because the rules that are actually stated in the arbitration agreement are not the rules that are actually being applied to disputes today. And if there's any other questions I'd be happy to answer. This is not the ordinary procedure, but I'd like Mr. Grant to get up and say something because I've just heard something quite contrary to what Mr. Grant represented. Certainly. Your Honor, the AAA changed the name and structure of their rules from the supplementary procedures for consumer-related disputes to the consumer arbitration rules. That was in 2014. The version of the agreement that we're dealing with here with Mr. Wisely was in 2012 and referred to the earlier title. AAA has also said, the structure of their agreement, that any provisions that refer to the old title now refer to the new consumer rules. And are the rules different? They're not substantially different. There are some places where they are. I just heard the word substantially. Apparently, they are different. According to Mr. Kashima, they are. That's never been raised or argued in this case, nor ever suggested that there's anything unconscionable about the AAA rules here or ever else. Let me make sure I understand what he said to me, and then I'm going to ask you specifically with respect to that, that the arbitration rules, the arbitration agreement specifies certain rules by name. Amazon is now applying different rules than those that were named. Is that right? The AAA is applying the rules as they've interpreted them, as they expressly say in their own rules. I think it's Rule R14, that if you formally refer to the supplemental rules, they now refer to the consumer arbitration rules. But the AAA rules change from time to time, is what you're saying. That's correct. So it sounds as though Amazon is now applying different rules than specified in the arbitration agreement with Mr. Wisely. No, Your Honor. And this is a key point that Mr. Kashima left out. Let's take the example of Ms. Fagerstrom. When she filed her arbitration, the other co-plaintiff in this case, she filed under the consumer rules. Those are the current operative rules with the AAA. It's relatively easy to determine that. Amazon is not applying some different set of rules. If Mr. Wisely wants to apply the former supplementary procedures, Amazon would have no objection. It might have to deal with AAA about that, because they've changed their own rules and they apply them differently. But certainly, whichever version was in existence at the time, as I've said as to the rest of the contract, certainly is the one that he can invoke now if he chooses to. But the problem here is, it's not that Amazon has gone out and changed the rules. It is that the governing arbitration body, AAA, has made certain changes to their rules, and we've simply incorporated those. Okay. Thank you. Thank you. Thank you both sides. Wisely v. Amazon.com, submitted for decision. Thank both sides for their arguments.
judges: W. Fletcher, Ikuta, Barker